ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN OPEN COURT
U.S.D.C. Atlanta

FEB 0 9 2016

James _____ itten, Clerk
By: Deputy Clerk

UNITED STATES OF AMERICA

*v.*

NATHAN E. HARDWICK IV AND
ASHA R. MAURYA

Criminal Indictment

No. 1:16-CR-_____

**UNDER SEAL**

1:16 CR 65

THE GRAND JURY CHARGES THAT:

**COUNT ONE**
**Conspiracy to Commit Wire Fraud**
**(18 U.S.C. § 1349)**

1.  Beginning on a date unknown to the Grand Jury, but at least by in or about 2011, and continuing through in or about August 2014, in the Northern District of Georgia and elsewhere, the defendants,

NATHAN E. HARDWICK IV and
ASHA R. MAURYA,

did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with each other and with others known and unknown to the Grand Jury to devise and intend to devise a scheme and artifice to defraud Morris Hardwick Schneider, LLC, LandCastle Title, LLC, and MHSLAW, Inc., and to obtain money and property from Morris Hardwick Schneider, LLC, LandCastle Title, LLC, and MHSLAW, Inc. by means of materially false and fraudulent pretenses, representations, and promises, and by the omission of material facts, in violation of Title 18, United States Code, Section 1343.

BACKGROUND

2. It is relevant to this Indictment that:

a. Morris Hardwick Schneider, LLC and LandCastle Title, LLC operated a law firm and title insurance agency headquartered in Atlanta, Georgia. Morris Hardwick Schneider, LLC and LandCastle Title, LLC were wholly-owned subsidiaries of MHSLAW, Inc. (hereinafter referred to collectively as "MHS"). MHS employed approximately 80 lawyers and several hundred non-lawyer employees in 16 states. MHS specialized in residential real estate closings and default and foreclosure matters. MHS also sold title insurance in connection with residential real estate closings. MHS had between 3 and 4 shareholders from in or about 2011 through in or about August 2014.

b. Defendant NATHAN E. HARDWICK IV was an attorney licensed to practice law in the State of Georgia. Defendant HARDWICK was the majority shareholder of MHS, managing partner of the law firm, and Chief Executive Officer of the title insurance agency until his resignation from such positions on or about August 18, 2014. Defendant HARDWICK was the only MHS shareholder and top executive in the firm who was physically present in MHS's Atlanta headquarters, and he supervised the financial management of MHS, including its accounting and banking operations.

c. Defendant ASHA R. MAURYA was an employee of MHS in Atlanta from in or about April 2009 until her termination in or about November 2014. Defendant MAURYA was hired to be MHS's Escrow Account Controller and was eventually promoted to the position of Chief Financial Officer of MHS's

closing division.  Defendant MAURYA managed MHS's attorney escrow account operations and other accounting operations under the supervision of defendant HARDWICK.

d.  MHS maintained bank accounts at multiple financial institutions for purposes of funding its operations.  In addition, as part of its real estate closing practice, MHS maintained attorney escrow accounts at multiple financial institutions to hold funds in trust until they were required to be disbursed in accordance with the direction of the parties to each transaction.

e.  During periods of high activity in the residential real estate market, MHS performed thousands of residential real estate closing transactions per month.  In connection with such closings, MHS received, held for safekeeping, and disbursed hundreds of millions of dollars in closing funds on behalf of the parties to each transaction.  At any given time, a single MHS attorney escrow account might contain millions of dollars.

<u>OBJECT OF THE CONSPIRACY</u>

3.  The object of the conspiracy was for defendant HARDWICK to steal money from MHS, and for defendant MAURYA to assist him in doing so, so that defendant HARDWICK and defendant MAURYA could enrich themselves at the expense of MHS.

<u>MANNER AND MEANS</u>

4.  It was part of the conspiracy that:

a.  Defendant HARDWICK caused and directed defendant MAURYA to make distributions, bonuses, and other payments to and for the benefit of

defendant HARDWICK from MHS's bank accounts, in amounts that exceeded the share of MHS's profits to which defendant HARDWICK was entitled, at times when no shareholder bonuses or distributions were scheduled to be made, and without causing or directing proportionate bonuses or distributions to be made to the other MHS shareholders.

b. The excess bonuses, distributions, and payments to and for the benefit of defendant HARDWICK included payments to American Express, Colony Bank, First Citizens Bank & Trust, NetJets, and defendant HARDWICK's ex-wife to satisfy personal judgments against defendant HARDWICK. They also included payments to casinos, private jet charter companies, credit card issuers, and other creditors and accounts of defendant HARDWICK, including payments for defendant HARDWICK's loan from Fortuna Service Company and line of credit from SunTrust Bank.

c. To fund defendant HARDWICK's excess bonuses, distributions, and payments, defendant HARDWICK and defendant MAURYA caused payments to be made to or for the benefit of defendant HARDWICK by interstate wire transfers of funds from MHS's operating accounts and attorney escrow accounts, and by other means.

d. Defendant HARDWICK concealed his excess bonuses, distributions, and payments from MHS and the other MHS shareholders by making false statements to the other MHS shareholders and others, and by causing defendant MAURYA to create and distribute false financial information about MHS, false shareholder distribution reports, and other false information. Defendant

HARDWICK also misled the other MHS shareholders by telling them that "No money is taken out ever unless the partners are paid their proportion" and by signing written shareholder agreements to that effect.

e.   Defendant MAURYA concealed defendant HARDWICK's personal payments and excess bonuses and distributions from MHS and the other MHS shareholders by making false statements to the other MHS shareholders and others, and by creating and distributing false financial information about MHS, false shareholder distribution reports, and other false information.

f.   Defendant HARDWICK and defendant MAURYA also hid defendant HARDWICK's excess bonuses, distributions, and payments from MHS and the other MHS shareholders through half-truths and by the omission of material facts.

g.   When the conspiracy began to be discovered by MHS employees and the other MHS shareholders beginning in or about July 2014, defendants HARDWICK and MAURYA attempted to hide and delay the discovery of the excess bonuses, distributions, and payments, including by making false statements to the other MHS shareholders, MHS employees, and others about the nature and amount of defendant HARDWICK's excess bonuses, distributions, and payments, and through other deceptive and obstructive conduct.

h.   Defendant HARDWICK also attempted to hide the excess bonuses, distributions, and payments that he had demanded and received by obtaining and attempting to obtain loans to repay part of the money that he had stolen from MHS. In doing so, defendant HARDWICK made false statements and

5

representations to multiple individuals and entities from whom he obtained or attempted to obtain loans, including one or more clients of MHS.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS TWO through NINETEEN
### Wire Fraud
### (18 U.S.C. §§ 1343 and 2)

5.  The Grand Jury hereby realleges and incorporates by reference the factual allegations contained in paragraphs 2 and 4 of this Indictment as if the same were fully set forth herein.

6.  Beginning on a date unknown to the Grand Jury, but at least by in or about February 2011, and continuing through in or about August 2014, in the Northern District of Georgia and elsewhere, the defendants,

NATHAN E. HARDWICK IV and
ASHA R. MAURYA,

aided and abetted by each other and by others known and unknown to the Grand Jury, did knowingly devise and intend to devise a scheme and artifice to defraud MHS and to obtain money and property from MHS by means of materially false and fraudulent pretenses, representations, and promises, and by the omission of material facts, well knowing and having reason to know that said pretenses, representations, and promises were and would be false and fraudulent when made and caused to be made and that said omissions were and would be material.

7.  It is relevant to the Indictment that:

6

a. During 2014, defendant HARDWICK's ownership interest in MHS was approximately 55%.

b. Defendant HARDWICK owned and controlled multiple bank accounts at Bank of America Merrill Lynch ("Merrill Lynch"), including one or more accounts in the name of Divot Holdings LLC, a company that he owned.

c. Defendant HARDWICK and the other MHS shareholders participated in conference calls approximately twice per month to discuss the firm's financial status and expected shareholder distributions. The estimated and actual performance, profits, and shareholder distributions of MHS were also periodically stated in a written report that defendant MAURYA or defendant HARDWICK sent to the other MHS shareholders. The amounts stated in the written reports were typically consistent with the estimated and actual amounts that were discussed during the bi-monthly conference calls.

8. Although the scheme took place over a period of years as alleged above, below are examples of how defendant HARDWICK and defendant MAURYA carried out the scheme over several months in 2014:

a. On or about April 29, 2014, defendant MAURYA sent a report to defendant HARDWICK and another MHS shareholder entitled "Equity Partner Distribution." The report stated that the total income of MHS for March 2014 was $702,667, and that defendant HARDWICK was entitled to a distribution in the amount of $281,039 for that period.

b. By April 29, 2014, however, defendants HARDWICK and MAURYA already had caused MHS to pay over $600,000 to or for the benefit of defendant

HARDWICK since April 1, 2014. Although defendants HARDWICK and MAURYA knew that these payments significantly exceeded the amount of the legitimate distribution to which defendant HARDWICK was entitled, defendants HARDWICK and MAURYA caused MHS to make nearly $400,000 in additional payments to or for the benefit of defendant HARDWICK between April 29 and April 30, 2014.

c.  On or about May 23, 2014, defendant MAURYA sent a report to the other MHS shareholders entitled "Equity Partner Distribution."  The report stated that the total income of MHS for April 2014 was $445,067, and that defendant HARDWICK was entitled to a distribution in the amount of $178,225 for that period.  Defendant MAURYA provided the same report to defendant HARDWICK.

d.  By May 23, 2014, defendants HARDWICK and MAURYA already had caused MHS to pay nearly $450,000 to or for the benefit of defendant HARDWICK since May 1, 2014.

e.  On or about June 20, 2014, defendant MAURYA sent a report to the other MHS shareholders entitled "Equity Partner Distribution."  The report stated that the total income of MHS for May 2014 was $605,795, and that defendant HARDWICK was entitled to a distribution in the amount of $242,294 for that period.  Defendant MAURYA provided the same report to defendant HARDWICK.

f.  By June 20, 2014, defendants HARDWICK and MAURYA already had caused MHS to pay over $900,000 to or for the benefit of defendant HARDWICK

since June 1, 2014.  Although defendants HARDWICK and MAURYA knew that these payments significantly exceeded the amount of the legitimate distribution to which defendant HARDWICK was entitled, defendants HARDWICK and MAURYA caused MHS to make $390,000 in additional payments to or for the benefit of defendant HARDWICK between June 27 and June 30, 2014.

     g.    Despite receiving significant excess bonuses, distributions, and payments in April, May, and June 2014, defendant HARDWICK sent an e-mail to defendant MAURYA on June 30, 2014 requesting distributions of "400k; 300k; and the 200k for next three weeks."  Defendants HARDWICK and MAURYA in turn caused MHS to make over $1.2 million in additional payments to or for the benefit of defendant HARDWICK throughout July 2014.

EXECUTION OF THE SCHEME TO DEFRAUD

    9.  On or about the dates identified in Column B of the chart set forth below, each date constituting a separate count as set forth in Column A, in the Northern District of Georgia and elsewhere, for the purpose of executing the aforementioned scheme and artifice to defraud, and attempting to do so, and for obtaining money and property from MHS by means of materially false and fraudulent pretenses, representations, and promises, and by the omission of material facts, the defendants,

NATHAN E. HARDWICK IV and<br>ASHA R. MAURYA,

aided and abetted by each other, did knowingly and willfully cause to be transmitted by means of wire and radio communication in interstate commerce, certain writings, signs, signals, pictures, and sounds, that is, the interstate wire

9

transfers of funds from the MHS bank accounts that are identified in Column C, in the amounts identified in Column D, to or for the benefit of the individuals and entities identified in Column E:

| A<br>Count | B<br>Date<br>(On or<br>About) | C<br>MHS Account | D<br>Amount | E<br>Beneficiary<br>Account |
|---|---|---|---|---|
| 2 | 04-03-14 | SunTrust Bank Account No. x7328, in the name "Morris Hardwick Schneider LLC GA IOLTA Incoming Wire Account" | $300,000 | Merrill Lynch Account No. x2190 in the name "Divot Holdings, LLC" |
| 3 | 04-03-14 | SunTrust Bank Account No. x7328, in the name "Morris Hardwick Schneider LLC GA IOLTA Incoming Wire Account" | $33,444.24 | Wells Fargo Bank Account No. x4086 in the name "NetJets Aviation, Inc." |
| 4 | 04-16-14 | SunTrust Bank Account No. x7328, in the name "Morris Hardwick Schneider LLC GA IOLTA Incoming Wire Account" | $35,318.40 | HSBC Bank Account No. x4305 in the name "Apollo Jets, LLC" |
| 5 | 04-18-14 | SunTrust Bank Account No. x7328, in the name "Morris Hardwick Schneider LLC GA IOLTA Incoming Wire Account" | $199,980 | Merrill Lynch Account No. x2190 in the name "Divot Holdings, LLC" |

| <u>A</u><br>Count | <u>B</u><br>Date (On or About) | <u>C</u><br>MHS Account | <u>D</u><br>Amount | <u>E</u><br>Beneficiary Account |
|---|---|---|---|---|
| 6 | 04-29-14 | SunTrust Bank Account No. x7328, in the name "Morris Hardwick Schneider LLC GA IOLTA Incoming Wire Account" | $37,463.03 | HSBC Bank Account No. x4305 in the name "Apollo Jets, LLC" |
| 7 | 04-30-14 | SunTrust Bank Account No. x7328, in the name "Morris Hardwick Schneider LLC GA IOLTA Incoming Wire Account" | $300,000 | Wells Fargo Bank Account No. x 9341 in the name, "Beau Rivage Resorts, Inc." |
| 8 | 04-30-14 | SunTrust Bank Account No. x7328, in the name "Morris Hardwick Schneider LLC GA IOLTA Incoming Wire Account" | $8,158.05 | HSBC Bank Account No. x4305 in the name "Apollo Jets, LLC" |
| 9 | 04-30-14 | SunTrust Bank Account No. x7328, in the name "Morris Hardwick Schneider LLC GA IOLTA Incoming Wire Account" | $28,415.50 | HSBC Bank Account No. x4305 in the name "Apollo Jets, LLC" |
| 10 | 05-02-14 | SunTrust Bank Account No. x7328, in the name "Morris Hardwick Schneider LLC GA IOLTA Incoming Wire Account" | $33,444.24 | Wells Fargo Bank Account No. x4086 in the name "NetJets Aviation, Inc." |

| <u>A</u> | <u>B</u> | <u>C</u> | <u>D</u> | <u>E</u> |
|---|---|---|---|---|
| Count | Date (On or About) | MHS Account | Amount | Beneficiary Account |
| **11** | 05-05-14 | SunTrust Bank Account No. x7328, in the name "Morris Hardwick Schneider LLC GA IOLTA Incoming Wire Account" | $22,491 | Merrill Lynch Account No. x2190 in the name "Divot Holdings, LLC" |
| **12** | 05-21-14 | SunTrust Bank Account No. x7328, in the name "Morris Hardwick Schneider LLC GA IOLTA Incoming Wire Account" | $12,314.56 | Merrill Lynch Account No. x2190 in the name "Divot Holdings, LLC" |
| **13** | 05-23-14 | SunTrust Bank Account No. x7328, in the name "Morris Hardwick Schneider LLC GA IOLTA Incoming Wire Account" | $219,304 | Merrill Lynch Account No. 2190 in the name "Divot Holdings, LLC" |
| **14** | 06-02-14 | SunTrust Bank Account No. x7328, in the name "Morris Hardwick Schneider LLC GA IOLTA Incoming Wire Account" | $33,444.24 | Wells Fargo Bank Account No. x4086 in the name "NetJets Aviation, Inc." |
| **15** | 06-03-14 | SunTrust Bank Account No. x7328, in the name "Morris Hardwick Schneider LLC GA IOLTA Incoming Wire Account" | $400,000 | Bank of America Account No. x9926 in the name "Las Vegas Sands LLC" |
| **16** | 06-04-14 | SunTrust Bank Account No. x9436, in the name "Morris Hardwick Schneider LLC" | $96,810 | HSBC Bank Account No. x4305 in the name "Apollo Jets, LLC" |

| A | B | C | D | E |
|---|---|---|---|---|
| Count | Date (On or About) | MHS Account | Amount | Beneficiary Account |
| 17 | 06-20-14 | SunTrust Bank Account No. x9436, in the name "Morris Hardwick Schneider LLC" | $300,000 | Merrill Lynch Account No. x2190 in the name "Divot Holdings, LLC" |
| 18 | 06-27-14 | SunTrust Bank Account No. x9436, in the name "Morris Hardwick Schneider LLC" | $68,653 | Merrill Lynch Account No. x2190 in the name "Divot Holdings, LLC" |
| 19 | 06-30-14 | SunTrust Bank Account No. x9436, in the name "Morris Hardwick Schneider LLC" | $321,352 | Merrill Lynch Account No. x2190 in the name "Divot Holdings, LLC" |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT TWENTY
### Bank Fraud
### (18 U.S.C. §§ 1344 and 2)

10. The Grand Jury hereby realleges and incorporates by reference the factual allegations contained in paragraphs 2 and 4 of this Indictment as if the same were fully set forth herein.

11. On or about December 30, 2009, in the Northern District of Georgia and elsewhere, the defendant, NATHAN E. HARDWICK IV, aided and abetted by others known and unknown to the Grand Jury, did knowingly execute and attempt to execute a scheme and artifice to defraud Crescent Bank & Trust Company, and to obtain moneys and funds owned by and under the custody and control of Crescent Bank & Trust Company, by means of materially false and

fraudulent pretenses, representations, and promises, and by the omission of material facts.

12. It is relevant to the Indictment that:

a. Prior to forming MHS with two other individuals in 2005, defendant HARDWICK operated a law firm known as Jackson and Hardwick LLC. Jackson and Hardwick maintained bank accounts at multiple financial institutions, including multiple attorney escrow accounts.

b. Crescent Bank & Trust Company was a financial institution as defined in Title 18, United States Code, Section 20, and its deposits were insured by the Federal Deposit Insurance Corporation.

## THE SCHEME TO DEFRAUD

13. The object of defendant HARDWICK's scheme to defraud was for defendant HARDWICK to enrich himself at the expense of Crescent Bank & Trust Company by deceiving Crescent Bank & Trust Company into making a personal loan to him by falsely pledging as collateral for the loan a Certificate of Deposit in the name of MHS, which contained attorney escrow account funds that did not belong to defendant HARDWICK or MHS and which defendant HARDWICK did not have the right to pledge as collateral for a personal loan.

## EXECUTION OF THE SCHEME TO DEFRAUD

14. Defendant HARDWICK executed and attempted to execute his scheme to defraud in the following ways:

a. In or about 2009, the exact dates being unknown to the Grand Jury, defendant HARDWICK caused MHS employees to close several dozen bank

accounts of the former Jackson and Hardwick law firm at multiple financial institutions, including multiple attorney escrow accounts, and to deposit the proceeds of those accounts into a single, newly-created bank account in the name of MHS at The Brand Banking Company.

b.  The closing and consolidation of the accounts was completed in late 2009, and resulted in deposits of over $600,000 into the newly-created account, the majority of which were funds from closed Jackson and Hardwick attorney escrow accounts.

c.  On or about December 30, 2009, defendant HARDWICK caused $631,276.71 to be wire-transferred from the newly-created account to Crescent Bank & Trust Company.

d.  On or about December 30, 2009, defendant HARDWICK caused Crescent Bank & Trust Company to open an interest-bearing Certificate of Deposit account in the name of MHS (the "MHS CD") and to deposit the wire-transferred funds therein.

e.  On or about December 30, 2009, defendant HARDWICK obtained a personal loan in the amount of $631,276.71 from Crescent Bank & Trust Company.

f.  To induce Crescent Bank & Trust Company into making that personal loan to him, on or about December 30, 2009, defendant HARDWICK signed a commercial security agreement with Crescent Bank & Trust Company.  The agreement purported to give Crescent Bank & Trust Company all of defendant HARDWICK's rights to the MHS CD if defendant HARDWICK was unable to

repay his personal loan. Defendant HARDWICK also caused MHS to enter into a hypothecation agreement with Crescent Bank & Trust Company, signing on behalf of both MHS and himself. This agreement purported to allow defendant HARDWICK to use the MHS CD as collateral for his own personal loan.

g.   When defendant HARDWICK signed the commercial security agreement and hypothecation agreement, he knew that the MHS CD contained attorney escrow account funds that did not belong to him or to MHS, and that neither he nor MHS had the right to pledge such funds as collateral for a personal loan to defendant HARDWICK.

h.   Between on or about December 30, 2009 and on or about February 3, 2010, Crescent Bank & Trust Company disbursed loan proceeds in the amount of $631,276.71 to or for the benefit of defendant HARDWICK.

i.   Defendant HARDWICK did not repay his $631,276.71 loan from Crescent Bank & Trust Company, and on or about October 29, 2014, Renasant Bank, as successor to Crescent Bank & Trust Company, liquidated the MHS CD containing $631,276.71 in attorney escrow account funds to satisfy defendant HARDWICK's personal debt.

All in violation of Title 18, United States Code, Sections 1344 and 2.

## COUNT TWENTY-ONE
### False Statement to a Federally-Insured Financial Institution
### (18 U.S.C. § 1014)

15.   The Grand Jury hereby realleges and incorporates by reference the factual allegations contained in paragraphs 2 and 4 of this Indictment as if the same were fully set forth herein.

16.  In addition, it is relevant to the Indictment that:

a.  The National Bank of Georgia was an FDIC-insured financial institution based in Athens, Georgia.

b.  On or about September 29, 2010, The National Bank of Georgia filed a lawsuit against defendant HARDWICK in the Superior Court of Fulton County, Georgia seeking $5,870,968.19 plus costs and fees related to certain loans.

c.  Bellagio, LLC operated the Bellagio Resort & Casino in Las Vegas, Nevada.

d.  On or about January 25, 2011, Bellagio, LLC filed a lawsuit against defendant HARDWICK in the District Court of Clark County, Nevada, seeking $250,000 in unpaid gambling debt.

17.  On or about May 10, 2011, in the Northern District of Georgia, the defendant, NATHAN E. HARDWICK IV, knowingly made and caused to be made a false statement in a loan application; namely, the statement "No" in response to the question, "Are there any suits or judgments pending against you?", for the purpose of influencing the actions of First Landmark Bank, a financial institution whose  deposits  were then insured by the Federal Deposit Insurance Corporation; namely, to make a loan to defendant HARDWICK in the amount of $25,000, when in truth and in fact, as defendant HARDWICK well knew, the statement was false because The National Bank of Georgia and Bellagio, LLC had suits pending against him at that time.

All in violation of Title 18, United States Code, Section 1014.

## COUNT TWENTY-TWO
### False Statement to a Federally-Insured Financial Institution
### (18 U.S.C. § 1014)

18.  The Grand Jury hereby realleges and incorporates by reference the factual allegations contained in paragraphs 2 and 4 of this Indictment as if the same were fully set forth herein.

19.  In addition, it is relevant to the Indictment that:

a.  On or about December 7, 2011, in connection with Bellagio, LLC's lawsuit against defendant HARDWICK, the court entered judgment against defendant HARDWICK in the amount of $250,000.

20. On or about February 4, 2013, in the Northern District of Georgia, the defendant, NATHAN E. HARDWICK IV, knowingly made and caused to be made a false statement in a loan application; namely, the false statement that "the information provided in this application is true and correct as of the date set forth opposite my signature," for the purpose of influencing the actions of First Landmark Bank, a financial institution whose deposits were then insured by the Federal Deposit Insurance Corporation; namely, to make a loan to defendant HARDWICK in the amount of $2,425,000, when in truth and in fact, as defendant HARDWICK well knew, the answers provided in the application in response to Question 8a ("Are there any outstanding judgments against you?") and Question 8d ("Are you a party to a lawsuit?") were false in that they omitted the pending lawsuit and judgment against defendant HARDWICK by Bellagio, LLC.

All in violation of Title 18, United States Code, Section 1014.

18

## COUNT TWENTY-THREE
### False Statement to a Federally-Insured Financial Institution
### (18 U.S.C. § 1014)

21. The Grand Jury hereby realleges and incorporates by reference the factual allegations contained in paragraphs 2 and 4 of this Indictment as if the same were fully set forth herein.

22. In addition, it is relevant to the Indictment that:

a. NetJets Aviation, Inc. and NetJets Sales, Inc. (collectively, "NetJets") offered private aircraft charter, leasing, and fractional share ownership services to members of the public.

b. On or about July 5, 2011, NetJets filed a lawsuit against defendant HARDWICK in the Franklin County, Ohio Court of Common Pleas seeking $966,548.70 in unpaid flight services.

c. On or about September 12, 2011, the court entered judgment against defendant HARDWICK in the amount of $1,003,327.17.

d. In or about February 2013, defendant HARDWICK signed a written settlement agreement with NetJets in which he agreed to pay NetJets $1,003,327.17 to resolve the lawsuit against him, to be paid in 30 equal monthly installments of $33,444.24 until mid-2015.

23. On or about March 21, 2014, in the Northern District of Georgia, the defendant, NATHAN E. HARDWICK IV, knowingly made and caused to be made a false statement for the purpose of influencing the actions of First Landmark Bank, a financial institution whose deposits were then insured by the Federal Deposit Insurance Corporation; namely, the false statement that

defendant HARDWICK was required to pay a minimum of $10,000 per month to NetJets under his settlement agreement with NetJets, but that he voluntarily paid a greater amount to pay off his debt more quickly, in order to obtain a line of credit from First Landmark Bank in the amount of $500,000, when in truth and in fact, as defendant HARDWICK well knew, defendant HARDWICK was required to pay NetJets a minimum of $33,444.24 per month under his February 2013 settlement agreement with NetJets.

All in violation of Title 18, United States Code, Section 1014.

## COUNTS TWENTY-FOUR through THIRTY-FOUR
### Mail Fraud
### (18 U.S.C. § 1341)

24. The Grand Jury hereby realleges and incorporates by reference the factual allegations contained in paragraphs 2 and 4 of this Indictment as if the same were fully set forth herein.

25. Beginning on a date unknown to the Grand Jury, but at least by in or about February 2011, and continuing through in or about August 2014, in the Northern District of Georgia and elsewhere, the defendant, ASHA R. MAURYA, did knowingly devise and intend to devise a scheme and artifice to defraud MHS and to obtain money and property from MHS by means of materially false and fraudulent pretenses, representations, and promises, and by the omission of material facts, well knowing and having reason to know that said pretenses, representations, and promises were and would be false and fraudulent when made and caused to be made and that said omissions were and would be material.

26.   It is relevant to the Indictment that defendant MAURYA maintained one or more personal credit card accounts with American Express.

## THE SCHEME TO DEFRAUD

27.   The object of defendant MAURYA's scheme to defraud was for defendant MAURYA to enrich herself by stealing money from MHS's bank accounts.

28.   In furtherance of the scheme to defraud, defendant MAURYA caused MHS to issue checks payable to her personal American Express accounts, drawn on MHS's bank accounts, without authorization from MHS, including the checks set forth in Counts 24 through 34 below.

29.   Defendant MAURYA accomplished her scheme to defraud in part by deceiving MHS employees into signing checks payable to American Express based on the false representation or pretense that the checks were to pay for legitimate business expenses charged to American Express accounts in the names of other MHS employees and shareholders, when in truth and in fact, as defendant MAURYA then and there well knew, defendant MAURYA was instead causing the checks to be issued to pay her own personal American Express bills.

## EXECUTION OF THE SCHEME TO DEFRAUD

30.   On or about the dates identified in Column B of the chart set forth below, each date constituting a separate count as set forth in Column A, in the Northern District of Georgia and elsewhere, for the purpose of executing the aforementioned scheme and artifice to defraud, and attempting to do so, and for obtaining money and property from MHS by means of materially false and

fraudulent pretenses, representations, and promises, and by the omission of material facts, the defendant, ASHA R. MAURYA, did knowingly and willfully cause the MHS-issued checks identified in Column C, in the amounts identified in Column D, to be sent and delivered by the United States Postal Service and other private and interstate carrier according to the directions thereon, to the recipient identified below in Column E:

| __A__ Count | __B__ Date (On or About) | __C__ Check Number | __D__ Amount | __E__ Recipient |
|---|---|---|---|---|
| 24 | 05-17-11 | 002290 | $6,969.89 | American Express |
| 25 | 07-15-11 | 003660 | $5,131.38 | American Express |
| 26 | 08-10-11 | 004283 | $7,428.37 | American Express |
| 27 | 09-20-11 | 005108 | $9,054.18 | American Express |
| 28 | 10-17-11 | 005806 | $10,638.58 | American Express |
| 29 | 11-11-11 | 006520 | $8,669.99 | American Express |
| 30 | 12-22-11 | 007562 | $8,172.55 | American Express |
| 31 | 01-26-12 | 008366 | $6,312.49 | American Express |
| 32 | 02-27-12 | 009184 | $11,051.24 | American Express |
| 33 | 04-06-12 | 010224 | $7,512.34 | American Express |
| 34 | 05-02-12 | 010743 | $9,471.37 | American Express |

All in violation of Title 18, United States Code, Section 1341.

### FORFEITURE PROVISION

Upon conviction of any of the offenses alleged in Counts 1 through 19 of this Indictment, the defendants, NATHAN E. HARDWICK IV and ASHA R. MAURYA, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any

property constituting or derived from proceeds obtained directly or indirectly as a result of the said violation.

In addition, upon conviction of any of the offenses alleged in Counts 20 through 23 of this Indictment, the defendant, NATHAN E. HARDWICK IV, shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(2), any property constituting or derived from proceeds obtained directly or indirectly as a result of the said violation.

In addition, upon conviction of any of the offenses alleged in Counts 24 through 34 of this Indictment, the defendant, ASHA R. MAURYA, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property constituting or derived from proceeds obtained directly or indirectly as a result of the said violation.

If any of the above-described forfeitable property, as a result of any act or omission of defendants HARDWICK and MAURYA:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) as incorporated by Title 18, United States Code, Section 982(b) or Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendant(s) up to the value of the forfeitable property described above.

A _____ *TRUE* _____ BILL

_____

FOREPERSON

JOHN A. HORN
*United States Attorney*

DAVID M. CHAIKEN
*Assistant United States Attorney*
Georgia Bar No. 118618

J. RUSSELL PHILLIPS
*Assistant United States Attorney*
Georgia Bar No. 576335

600 U.S. Courthouse
75 Ted Turner Drive, S.W.
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181