IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. |
| v. | 1:16-cr-65-ELR-CMS |
| NATHAN E. HARDWICK, IV | |

**REPORT AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE**

This case is before the Court on Defendant Nathan E. Hardwick's Motion for Severance (Doc. 60) and Particularized Motion for Severance (Doc. 73) (collectively the "Motion to Sever"), brought pursuant to Bruton v. United States, 391 U.S. 123, 88 S. Ct. 1620 (1968). Hardwick asks the Court to sever his case from that of his co-defendant Asha Maurya due to allegedly incriminating statements that Maurya made about Hardwick. Also before the Court is Hardwick's unopposed Motion for Additional Time to Comply with the Court's Order to Advise the Court of Any Experts He Plans to Call at Trial. (Doc. 86).

**I.   MOTION TO SEVER (Docs. 60, 73)**

**A. BACKGROUND**

On February 9, 2016, a federal grand jury returned an indictment charging Hardwick and Maurya with conspiracy, wire fraud, and related crimes in

connection with Hardwick's alleged theft of more than $20 million from the attorney escrow accounts and operating accounts of Morris Hardwick Schneider and LandCastle Title, an Atlanta-based law firm and title agency in which Hardwick and Maurya once served as top executives. (Doc. 1, Indictment). In addition to charges against Maurya for allegedly assisting with Hardwick's theft, the indictment also charges Maurya with stealing approximately $900,000 from the firm's accounts to pay her own personal expenses. (Id.).

In his Motion to Sever, Hardwick states that Maurya has made certain statements to the Government that implicate him, and therefore, the Court should sever his case from that of Maurya pursuant to Bruton.[1] (Doc. 60). Specifically, Hardwick has identified the following short quotations purportedly taken from certain statements that Maurya made. Hardwick identifies these quotations only by Bates number, and he provides the Court with no context for the statements, such as when, where, or to whom the statements were made.

---

[1] In his original motion, Hardwick also asserted that his case should be severed under Federal Rule of Criminal Procedure 14 due to the assertion of antagonistic defenses. (Doc. 60 at 1). In his perfected motion, however, Hardwick does not indicate what possible antagonistic defenses might be presented, focusing instead exclusively on the statements and purported Bruton problem. (See Doc. 73). Because Defendant has presented no argument or facts concerning what the antagonistic defenses might be, I recommend that Hardwick's motion based on Rule 14 be DENIED.

- "Nat only beneficiary of $700K out of escrow"

- "2013 guess extra to Nat ≈ $3M"

- "prepared reports (cash/flow, AP, etc) for all 3 equity partners; Nat said he would view first and edit remove items and then she could send to other 2"

- "$700K 2010 Nat getting $ d/k if reported on taxes (Nat[] says rep. as return of capital)"

- "gave Bob file w/ all wiring instr. For Nat / emailed Nat w/ wire conf. for Nat / Nat would email her"

- "$4.6 M used to fund escrow and to benefit Nat"

- "Nat told Asha she will disburse them to him even though she didn't feel comfortable doing so."

- "Asha told Nat Hardwick that she was resigning on 7/18/14 but he asked her not to resign and put her on paid leave."

- "Asha met with Art Morris & Mark W. on 8/1/14 and told them about Nat's excess distributions."

- "Nat pressured Asha to make the escrow transfers."

- "Nat had Asha change the distribution reports showing that he received less than he actually did."

- "Nat has a major gambling problem and spending problem."

- "Nat begged Asha not to say anything."

- "Nat told Asha on 8/15/14 he was going to kill himself."

- "Distributions of escrow funds were directed by Nat in emails beginning in Dec 2012 through July 17, 2014 as Asha was put on leave 7/18/14. Nat did not have online access to SunTrust escrow funds to do it himself."

- "Nat has credit problems."

- "Nat actually gave up part of his ownership to Arthur Morris.… [i]n exchange for cash so he could pay alimony to stay out of jail."

(Doc. 73 at 2-4).[2]

Hardwick provides no discussion as to how Bruton might apply to each statement. Hardwick asserts generally that the statements were made "to the government," but he provides no specifics. (Doc. 60 at 1; Doc. 73 at 2). Most of the statements were not, in fact, made "to the government" but rather were made to other law firm employees or to the firm's title insurance underwriters before any criminal investigation was commenced. (Doc. 85 at 23 n.5). In his perfected

---

[2] The following two additional statements were raised in Hardwick's Motion to Sever, but the Government has indicated that it will not offer these statements in a joint trial unless Maurya testifies, meaning that the Bruton problem is solved with respect to these two statements: (1) "I was instructed by Bob to combine all the trust accounts and to close them out and that we were going to give the funds— that Nat wanted the funds to be disbursed to him."; (2) "[Nat Hardwick said], 'You want a career in accounting?' I said yes. He said, 'Well then you're gonna close those accounts and I'll send you instructions as to where I want the funds sent.'" (Doc. 85 at 23).

motion, Hardwick represents to the Court that he will provide the full statements to the Court under seal (Doc. 73 at 2), but he has failed to do so. Other than listing out these brief quotations, Hardwick makes no particularized argument with respect to any of the statements. (See Doc. 73). In response to the Motion to Sever, the Government argues, among other things, that the statements do not trigger Bruton because they are not incriminating on their face. Hardwick did not file a reply brief.

### B. DISCUSSION

Under Bruton, severance may be required where the Government seeks to introduce a non-testifying co-defendant's extrajudicial confession that directly incriminates the defendant, even when introduced only against the co-defendant. If the confession is introduced, and the co-defendant does not testify, the defendant's Sixth Amendment right to directly confront adverse witnesses against him may be infringed. Bruton, 391 U.S. at 126, 88 S. Ct. at 1623; United States v. Doherty, 233 F.3d 1275, 1281-82 (11th Cir. 2000). There is no Bruton violation, however, and severance is not required, if the defendant is not directly implicated by the out-of-court statements. Richardson v. Marsh, 481 U.S. 200, 208, 107 S. Ct. 1702, 1707-1708 (1987) (holding that there was no Bruton problem where the statements "[were] not incriminating on [their] face, and became so only when linked with

evidence introduced later at trial"); United States v. Arias, 984 F.2d 1139, 1142 (11th Cir. 1993) (the "Confrontation Clause has never been held to bar the admission into evidence of every relevant extrajudicial statement made by a non-testifying declarant simply because it in some way incriminates the defendant").

Here, it is evident that Hardwick has failed to show a potential Bruton problem based on the statements set forth in the Motion to Sever.  The quoted statements are not incriminating on their face; rather, they may become so only when linked with evidence introduced later at trial.  See Marsh, 481 U.S. at 208, 107 S. Ct. at 1707.  While these statements, taken together with other evidence, might in some way incriminate Hardwick, none "directly" or "facially" inculpates him.[3]

---

[3] The Government also argues that the listed statements fall outside of the Bruton analysis because they were not "testimonial" in nature and therefore do not implicate the Confrontation Clause.  (Doc. 85 at 15-20). The Eleventh Circuit has not yet addressed in a published opinion whether an out-of-court statement must be testimonial for Bruton to apply, but the Eleventh Circuit has stated in an unpublished opinion that because "Bruton was premised on the Confrontation Clause, its protections only apply to testimonial statements." United States v. Rodriguez, 591 F. App'x 897, 901 (11th Cir. 2015), cert. denied, 136 S. Ct. 37, 193 L. Ed. 2d 50 (2015).  Hardwick has not responded to this argument or provided the Court with any way to determine whether the statements are testimonial in nature.  This appears to be an additional ground for denial of the Motion to Sever.

Most of the statements are benign, or even meaningless, without context. Each requires an explanation as to why it could be viewed as inculpatory, but Hardwick has not provided such an explanation, or even attempted to do so.

For example, Maurya's statements about Hardwick's gambling, spending, credit, cash-flow, and mental health problems could be relevant to prove Hardwick's motive and intent to commit the charged crimes, but these statements do not directly accuse Hardwick of committing any crime and are not incriminating on their face. Similarly, statements about the mechanics of the preparation and distribution of the law firm's financial reports and how distributions were made could be relevant to prove Hardwick's knowledge of the firm's finances and the manner in which the crime allegedly was committed, but they do not accuse Hardwick of any crime and are not incriminating on their face. Several of the statements merely describe otherwise lawful business activity, and could become incriminating only when linked with other evidence. In sum, none of the statements constitute the sort of "powerfully incriminating" accusatory statement that could fall within the scope of Bruton. See United States v. Abram, 171 F. App'x 304, 312 (11th Cir. 2006) (finding no Bruton violation where the statement did not implicate the defendant in a crime).

## II.     MOTION FOR ADDITIONAL TIME (Doc. 86)

Through his Motion for Additional Time (Doc. 86), Hardwick asks for a six-month extension of the deadline to advise the Court of any experts he plans to call at trial. The original deadline for the disclosure was October 14, 2016 (Doc. 83), meaning that a six-month extension would make the new deadline April 14, 2017. The Government has indicated that it does not oppose Hardwick's request. (Doc. 93). Given the large amount of discovery at issue in this case and the Government's statement that it does not oppose Hardwicks request for additional time, I **RECOMMEND** that this motion be **GRANTED**. While such a request is typically handled by a Magistrate Judge in an order, I felt it prudent to merely make a recommendation in this instance because granting such a long extension may impact that District Judge's trial calendar.

## III.    CONCLUSION

For the foregoing reasons, I **RECOMMEND** that Hardwick's Motion to Sever (Docs. 60, 73) be **DENIED** and that his Motion for Additional Time to Comply with the Court's Order to Advise the Court of Any Experts He Plans to Call at Trial (Doc. 86) be **GRANTED**.

In addition, it appears that there are no further outstanding pretrial or discovery matters for me to address. Accordingly, this case is **CERTIFIED** as ready for trial.

**IT IS SO RECOMMENDED** this 12th day of December, 2016.

_____
CATHERINE M. SALINAS
UNITED STATES MAGISTRATE JUDGE