# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * * * * | |
| v. | * * | 1:16-CR-00065-ELR |
| NATHAN E. HARDWICK, IV, | * * * | |

# ORDER

This matter is presently before the Court on the Government's Motion in Limine to Exclude Defendant's Purported Expert Witnesses. (Doc. 125). The Court sets forth its rulings and conclusions below.

**I. Background**

Defendant, Nathan E. Hardwick ("Defendant"), stands charged in several counts of a superseding criminal indictment for conduct related to employment with his former law firm. (Docs. 1 and 126). At a pretrial conference on August 18, 2016, this Court ordered Defendant to advise the Court of any experts he plans to call at trial by October 14, 2016. (*See* Doc. 83.) This deadline was extended multiple times. (*See* Docs. 86, 100, 108 and 109.) On September 6, 2017, the undersigned

granted the Government's motion to compel Defendant's compliance with Federal Rule of Criminal Procedure 16 ("Rule 16") regarding expert witness disclosures. (*See* Docs. 116 and 117.) On October 13, 2017, after initially disputing that he had any obligation to comply with Rule 16's expert disclosure requirements, Defendant, filed "Preliminary Expert Witness Disclosures," and noted that "additional details" would be provided by October 31, 2017. (See Docs. 118 and 122.) This later deadline was never approved by the undersigned, nor had Defendant requested any such extension from the Court. Despite this representation, and the Court's lack of approval, Defendant did provide some additional details regarding his purported experts well beyond October 31, 2017, on December 18, 2017. (Doc. 130.) The Government contends that Defendant's expert witnesses should be excluded, not only because Defendant has failed to comply with Rule 16, but also because Defendant has not met his burden of establishing that his purported experts satisfy Daubert. A hearing on the Government's motion was held before the undersigned on August 7, 2018. At the hearing, the Court established the parties' agreement as to which defense witnesses the Government was challenging. Specifically, both parties understand that the Government's motion challenges: J.P. Gingras, Sheldon Kay, Adrian Loud, and John Remsen, Jr.[1]

---

[1] Although the Government also moved to exclude Dr. Matthew Norman on slightly different grounds, defense counsel announced in court that Dr. Norman would not be called as a trial witness.

2

## II. Legal Standards

### A. Daubert Standard

Federal Rule of Evidence 702, which governs the admissibility of expert testimony, provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Although the rule, on its face, provides the Court with only limited guidance, the United States Supreme Court's opinion in Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993) is instructive. "Unlike an ordinary witness, . . . an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." Id. at 592. Unfortunately, however, a jury may find it difficult to evaluate an expert's opinion. See id. Trial courts are therefore tasked with acting as "gatekeepers" to ensure that a proposed expert's testimony is not only relevant, but reliable. Id. To that end, district courts are

3

"charged with screening out experts whose methods are untrustworthy or whose expertise is irrelevant to the issue at hand." Corwin v. Walt Disney Co., 475 F.3d 1239, 1250 (11th Cir. 2007).

As the gatekeeper, the trial court must make a "rigorous three-part inquiry" to determine whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562 (11th Cir. 1998)). Although there is inevitable overlap among the three prongs of this analysis, trial courts must be cautious not to conflate them, and the proponent of expert testimony bears the burden to show that *each* requirement is met. Id.; Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla., 402 F.3d 1092, 1113-14 (11th Cir. 2005).

Although many factors bear on the Court's inquiry, there is no definitive checklist. Maiz v. Virani, 253 F.3d 641, 665 (11th Cir. 2001); see also United States v. Scott, 403 F. App'x 392, 397 (11th Cir. 2010) (finding that Daubert provides only general guidelines and that the trial judge has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable") (quoting Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999)). There

4

are multiple ways, for instance, that an individual may be qualified to give expert testimony. Indeed, the text of Rule 702 makes clear that expert status may be based on "knowledge, skill, experience, training, *or* education." FED. R. EVID. 702 (emphasis added); FED. R. EVID. 702 advisory committee's note (2000 amends.) ("Nothing in this amendment is intended to suggest that experience alone . . . may not provide a sufficient foundation for expert testimony."); Frazier, 387 F.3d at 1260-61.

Likewise, Daubert sets forth a list of "general observations" regarding the reliability of a proposed expert's testimony. Factors to be considered include: (1) whether the expert's theory can be and has been empirically tested; (2) whether the expert's theory has been subjected to peer review and publication; (3) the known or potential error rate of the expert's theory and whether that rate is acceptable; and (4) whether the expert's theory is generally accepted in the scientific community. Daubert, 509 U.S. at 593-94. Importantly, not every factor "will apply in every case, and in some cases other factors will be equally important in evaluating the reliability of proffered expert opinion." Frazier, 387 F.3d at 1262; accord FED. R. EVID. 702 advisory committee's note (2000 amends.). Thus, the trial court has considerable leeway to determine whether proffered expert testimony is reliable. Frazier, 387 F.3d at 1262.

Finally, the district court must assess whether the expert testimony will assist the trier of fact. Put another way, the court must ask whether the expert testimony "concerns matters that are beyond the understanding of the average lay person." Id. If the proffered expert testimony "offers nothing more than what lawyers for the parties can argue in closing arguments," it should not be admitted. Id. at 1262-63.

## III. Analysis of Purported Expert Testimony

### a. J.P. Gingras

Defendant has offered J.P. Gingras as a witness who would opine on "accounting, economic or financial concepts" (*See* 130-1 at 2.) As an initial matter, the Court finds that despite the multiple extensions, Defendant still has not complied with Rule 16 expert disclosure requirements as they pertain to Mr. Gingras. Particularly, Defendant has not disclosed a report, nor summary of an expert opinion prepared by Mr. Gingras. Defendant has essentially argued that no such disclosure is necessary because Mr. Gingras would merely testify as to various "methodologies" used for certain concepts, such as determining appropriate ways to make reasonable financial distributions to partners and other stakeholders at Defendant's former law firm. However, Defendant has not even listed which methodologies would be included in this testimony, much less what Mr. Gingras's opinion is regarding these so-called methodologies. This is despite Mr. Gingras being identified by Defendant as an expert as early as June 16, 2017. (See Doc. 114-

1.) Given this lack of Rule 16 compliance, the Court does not have before it enough information about Mr. Gingras' expertise to even assess his purported testimony under the Daubert standing. Accordingly, the Court grants the Government's motion here.

      b.    *Adrian Loud*

The Court also finds that Defendant has not complied with Rule 16 expert disclosures relative to Adrian Loud, who according to Defendant, would be offered to opine on "various types of analytical approaches that can be used to evaluate the market value of [Defendant's former law firm] in August 2014." (Doc. 130-1 at 20.) Again, as in the case of Mr. Gingras, Defendant has not disclosed any written summary prepared by Mr. Loud of his opinions. Additionally, in court at the hearing, defense counsel could not identify for the Court the names of any of the "approaches" that Mr. Loud would discuss in his testimony. In the absence of such critical information, the Court cannot assess Mr. Loud's purported testimony pursuant to the Daubert standards. Furthermore, the Government could not reasonably be expected to assess Mr. Loud's purported testimony to the point of determining whether a suitable rebuttal witness might be needed. The Court grants the Government's motion here.

    *c.*    *John Remsen, Jr.*

Defendant intends to call John Remsen, Jr. to testify about the necessity and reasonableness of certain law firm marketing strategies. (Doc. 130-1). Although a summary of Mr. Remsen's purported testimony was filed well after the Court's prescribed deadlines, the Court finds that the December 18, 2017 filing has provided the Government with enough notice to adequately prepare to cross examine Mr. Remsen. The Court further finds that Defendant has set forth enough information concerning Mr. Remsen's qualifications, knowledge of law firm marketing, and experience in this field, to meet the Daubert standard. Thus, Mr. Remsen may testify as to the reasonableness of the marketing strategies employed by Defendant's former law firm. However, Mr. Remsen may not testify as to whether these strategies were effective or successful because as he stated during his testimony at the hearing, he has never reviewed any of the financial documents, including Return of Investment ("ROI") attributed to Defendant's former law firm. With this understanding, the Government's motion to exclude Mr. Remsen's testimony is denied.

    *d.*    *Sheldon Kaye*

Finally, Defendant intends to call Sheldon Kaye to assist the jury by explaining certain terms and concepts such as "'S' corporation," "distributions," "compensation," "equalizing dividends," "ordinary versus necessary expenses," etc. that are likely to come up in discussing the bylaws and Shareholders Agreement of

Defendant's former law firm. (Doc. 130-1). Although Mr. Kay may explain these terms, he may not testify as to the legitimacy of the underlying activity of Defendant's former law firm in generating revenue, or incurring expenses because, based on his testimony at the hearing, he did not review the firm's financial records. Thus, in addition to defining and explaining certain terms, the essence of Mr. Kay's permissible testimony is whether generally, certain distributions, like "true ups" affect a corporation's qualification for "S" status.

## IV.   Conclusion

For the reasons stated herein, the Court **GRANTS IN PART** and **DENIES IN PART** the Government's Motion in Limine to Exclude Defendant's Purported Expert Witneses (Doc. 125).

**SO ORDERED**, this 13th day of August, 2018.

Eleanor L. Ross
United States District Judge
Northern District of Georgia